THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. TDC-21-0449 |
| | * | |
| RONALD EUGENE WATSON, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| *******| | |

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE OF
UNCHARGED TAX MISCONDUCT AND MEMORANDUM IN SUPPORT**

The United States of America, by and through undersigned counsel, moves to admit evidence of uncharged tax misconduct. The government submits that such evidence is either intrinsic to the charged offenses, or admissible as evidence of other acts under Rule 404(b) to prove the defendant's intent, knowledge, absence of mistake, and/or lack of accident with respect to the charges in the indictment. Because this evidence is offered for a permissible purpose, and because its probative value is not substantially outweighed by the danger of unfair prejudice, the Court should permit the government to introduce this evidence at trial.

    **I.    Charged Misconduct**

Watson is charged with twenty-eight counts of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). *See generally* Indictment (ECF No. 1). The indictment alleges that from at least 2015 through at least 2017, Watson worked as a tax return preparer. *Id.* ¶¶ 1, 7.  In that capacity and during that timeframe, Watson willfully prepared and filed false returns for his clients in order to generate tax refunds (or to lower taxes owed) in amounts greater than what the taxpayer-clients were entitled to receive. *Id.* Typically, Watson falsified his clients' returns by reporting inflated and wholly fictious tax deductions (Schedule A)

and fraudulent business profits and losses (Schedule C). *Id.* ¶¶ 7, 8. These falsities had the effect of materially lowering the amount of taxable income that was reported on the clients' returns, often causing the Internal Revenue Service ("IRS") to issue tax refunds to the clients in amounts in excess of what they were actually entitled to receive. *Id.*

## II. Additional Evidence Of Tax Misconduct

The following is a description of the evidence that the government seeks to admit either as evidence that is intrinsic to the charged offenses or as other acts evidence pursuant to Rule 404(b).

### a. Uncharged, False Client Tax Returns for Adjoining Tax Years

The counts charged in the indictment cover false returns that Watson prepared for his clients in tax years 2015 through 2017. For several of the clients listed in the indictment, Watson also prepared false tax returns in adjoining tax years, including tax years 2013, 2014, and 2018. Watson falsified these additional returns in similar fashion to the returns specified in the indictment; namely, by reporting false deductions on Schedules A and false business losses on Schedules C. In total, the Government moves to admit the following additional uncharged tax returns that Watson prepared for clients identified in the indictment:

1. Clients #4 & 5: 2013, 2014
2. Client #6: 2013, 2014
3. Client #7: 2013, 2014
4. Client #9: 2013, 2014
5. Clients #10 & 11: 2013, 2014
6. Clients #12 & 13: 2013
7. Clients #14 & 15: 2013, 2014
8. Clients #16 & 17: 2013, 2014, 2018

b.      Watson's False Individual Income Tax Returns

Watson prepared and filed his own individual income returns for tax years 2013, and 2017 through 2020. On his 2013, 2017, and 2018 returns, Watson attached Schedules C with falsely inflated business expenses that lowered his taxable income, employing a similar method of fraud as he used to prepare his clients' false returns.[1] In addition, on his 2013 return, Watson falsely claimed that he had made $128,140 in tax payments for that year (despite only reporting $176,591 in total income). This resulted in him also fraudulently claiming a $88,201 refund for 2013.

c.      Watson's Failure to File Individual Income Tax Returns for 2015 and 2016

Watson failed to file individual returns for himself for tax years 2015 and 2016. In these two years, as Watson self-reported through the software he used to prepare his clients' returns, Watson earned approximately $277,316.77 (2015), and $211,388.05 (2016) in return preparation fees across those two years. These gross receipts placed him above the income filing threshold, requiring him to file individual income returns for those years.[2]

d.      Evidence of Participation in Tax Fraud Committed by Sandra Curl and Percy Jacobs

The government intends to offer evidence that Watson prepared, or assisted in the preparation, of false returns for trusts controlled by Sandra Curl and/or Percy Jacobs which

---

[1] On Watson's 2019 and 2020 returns, filed well after he learned of the IRS's investigation into him, he reports far fewer Schedule C losses (although still reports some suspicious losses). As described below, the government may seek to introduce these additional two returns.

[2] For example, the income threshold in 2015 for a head of houseful under 65 was $13,250. Publication 501, Internal Revenue Service (Dec. 29, 2015), https://www.irs.gov/pub/irs-prior/p501--2015.pdf. The threshold is based on gross income, which, for self-employed persons, means the gross receipts as listed on a Schedule C, and not offset by any claimed losses. *See id.* at 2.

resulted in significant loss. Specifically, the evidence consists of various tax forms, including Tax Forms 1041 and Schedule Cs, for tax year 2016 prepared by Watson. This fraud resulted in the issuance of a treasury check to a trust controlled by Sandra Curl that was successfully negotiated for $250,579.

### III. Legal Standard

At trial, the government may introduce evidence of uncharged misconduct that arises out of the same "series of transactions as the charged offenses," or which "is necessary to complete the story of the crime." *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (internal quotations omitted). Such evidence is admissible because it is "intrinsic" to the charged offenses. *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996) ("where testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible"). In tax cases, the Fourth Circuit has held that the government may introduce evidence of uncharged tax misconduct, including in years prior to those covered by the indictment, if such misconduct involved the same series of transactions as the charged offenses. *See*, *e.g.*, *United States v. Sutherland*, 921 F.3d 421, 430 (4th Cir. 2019) (false 2007 return admissible in prosecution for filing false returns for 2008 through 2010); *United States v. Lee*, 60 F. App'x 425, 427 (4th Cir. 2003) (in a prosecution for filing false refund claims with the IRS, evidence of 96 federal tax returns and 55 state income tax returns not charged in the indictment admissible).

In some situations, evidence of uncharged misconduct may be considered extrinsic to the charged offenses and therefore treated as "other acts" evidence. The admissibility of such evidence is governed by Federal Rule of Evidence 404(b). Rule 404(b) permits the government

to introduce evidence of crimes, wrongs, or other acts that are not charged in the indictment to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." This is a rule of inclusion rather than exclusion; evidence of similar acts should be admitted at trial unless they "prove[] nothing but criminal disposition." *United States v. McLamb*, 985 F.2d 1284, 1289 (4th Cir. 1993) (citing *United States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980)).

The Fourth Circuit has articulated a four-part test for determining whether evidence is admissible under Rule 404(b). *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012); *see also United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988). Evidence of other acts is admissible if the acts are (1) relevant to an issue other than character, (2) necessary, (3) reliable, and (4) more probative than unfairly prejudicial. *McBride*, 676 F.3d at 396. To be relevant, evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence is "necessary" if it is probative of an element of the offense or an essential claim in the case. *McBride*, 676 F.3d at 396. Evidence is "reliable" unless it is "so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993).

Even if evidence satisfies the first three prongs of the test, it must still be evaluated under Rule 403 and may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See McBride*, 676 F.3d at 396; *Rawle*, 845 F.2d at 1247. Unfair prejudice occurs only when there is "a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States*

*v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) (internal quotation marks omitted). When the evidence sought to be excluded under Rule 403 is of some probative value, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). Finally, the unfair prejudicial value of evidence "can be generally obviated by a cautionary or limiting instruction, particularly if the danger of [unfair] prejudice is slight." *Masters*, 622 F.2d at 87.

When a defendant pleads not guilty to a specific intent crime, he puts his intent at issue and the government is permitted to introduce evidence pursuant to Rule 404(b) to prove that the defendant acted with the requisite criminal intent. *See United States v. Basham*, 561 F.3d 302, 328 (4th Cir. 2009); *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997); *United States v. Melia*, 691 F.2d 672, 676 (4th Cir. 1982). In tax cases, the government must prove that a defendant acted willfully, which the Supreme Court has defined as a committing a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 200-01 (1991). Stated differently, the government must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* at 201.

Because the government has the high burden of proving willfulness in tax cases, courts have permitted the government to introduce evidence of uncharged tax misconduct when it tends to show that the defendant knew that he was violating the law when he engaged in the tax misconduct charged in the indictment. *See, e.g., United States v. Toto-Ngosso*, 407 F. App'x 687, 689-90 (4th Cir. 2011) (in prosecution for preparing false tax returns for clients, evidence that defendant prepared false returns in addition to those charged in indictment admissible to prove

6

defendant acted willfully when preparing charged returns); *United States v. Dantzler*, 45 F. App'x 259, 261 (4th Cir. 2002) (defendant's prior indictment and arrest aiding in the filing of false returns admissible in prosecution for filing false claims with IRS). *See also United States v. Ausmus*, 774 F.2d 722, 727–28 (6th Cir. 1985) (evidence of defendant's failure to pay taxes in other years admissible to prove that failure to pay taxes in charged years not the result of an accident or mistake).

## IV. Argument

All of the additional tax misconduct described above is admissible as either intrinsic evidence, or as extrinsic evidence admissible under Rule 404(b).

### a. Uncharged, False Client Tax Returns for Adjoining Tax Years

Evidence regarding the false tax returns that Watson prepared for his clients in the years immediately adjoining the years covered by the indictment is intrinsic to the charged offenses because it arises from the same series of transactions and the same scheme. *See United States v. Sutherland*, 921 F.3d 421, 430 (4th Cir. 2019). In numerous counts, Watson is charged with preparing false tax returns for his clients, typically by falsely claiming deductions on Schedules A or by falsely reporting fictitious business expenses on Schedules C. In addition to the tax years charged in the indictment, Watson prepared false returns for some of the very same clients in previous years (and, in one instance, 2018), in similar fashion. For example, Counts 12 and 13 of the indictment allege that Watson prepared a false return for Client #7 in tax years 2015 and 2016, respectively. Indictment at 6 (ECF No. 1). On each of those returns, Watson falsely deducted thousands of dollars in unreimbursed employee expenses on Schedules A (in addition to other falsities). *Id.* Almost identically, Watson prepared Client #7's tax returns for tax years 2013 and

2014—years not charged in the indictment because they fell outside of statute of limitations—and falsely deducted thousands of dollars in unreimbursed employee expenses on Schedules A.

This evidence is also necessary to tell the story of the crime. Fraud was Watson's business model and competitive edge. He ran a volume business and depended on his clients to return to his business each year and to advertise his services by word of mouth. Fraudulently driving down his clients' taxable income and generating large refunds helped achieve both goals, as demonstrated by his clients using his services over multiple successive years.

But even assuming *arguendo* that this evidence is considered extrinsic to the charged conduct, it is nevertheless admissible as evidence of other acts within the meaning of Rule 404(b) because it satisfies the four-part test for admission under the rule. *See United States v. Toto-Ngosso*, 407 F. App'x 687, 689-90 (4th Cir. 2011).

First, the additional false tax returns are relevant to an issue other than character. Namely, the evidence helps prove Watson's willfulness by proving that his preparations of false returns was not a mistake and fit a modus operandi. *See United States v. Siegel*, 536 F.3d 306, 318 (4th Cir. 2008) (holding that because evidence of other acts "established a modus operandi, it is admissible under Rule 404(b)").

Second, and similarly, the proposed other acts evidence is "necessary," because it is probative of an element of the offense, to wit: willfulness.

Third, the evidence is reliable. The testimony establishing that Watson prepared false returns in prior years for the same clients will be largely identical to the testimony establishing that Watson prepared false returns in the charged years: the tax returns will be admitted through an IRS Records Custodian and the relevant client will provide testimony establishing that those

returns are false.

Fourth and finally, the probative value of the uncharged tax returns is not substantially outweighed by the danger of unfair prejudice; but for the tax year in question, the conduct is nearly identical to the charged conduct. *See United States v. Imariagbe*, 679 F. App'x 261, 262 (4th Cir. 2017) (holding that a chart of non-charged false tax returns that contained similar falsities to the charged returns "was not excessively prejudicial because the evidence involved the same type of conduct as the offenses charged in the indictment").

    b.  <u>Watson's False Individual Income Tax Returns</u>

Evidence regarding Watson's preparation and filing of his own false tax returns is also admissible under Rule 404(b).

      i.  *Falsities in Watson's 2013, 2017, and 2018 Individual Tax Returns*

Watson's individual returns for tax year 2013, 2017, and 2018 all contain multiple falsities, including falsely inflated business expenses reported on Schedules C. For example, in connection with his tax preparation business, Watson claimed contract labor expenses of $40,204 in 2013, $23,150 in 2017, and $36,520 in 2018. Yet despite purportedly paying tens of thousands of dollars for contract labor, there are no Forms 1099 associated with those returns, according to IRS records. Additionally, it is anticipated that Watson's clients will testify at trial that they met only with Watson to prepare their tax returns. They will testify that they met Watson at his office in Largo, Maryland, which appeared to be a single office within a shared office space serving multiple different entities. Aside from a receptionist at the space who appeared to serve all the entities, the clients typically only saw Watson physically present in the space.

In addition, Watson claimed several other business expenses that strain credulity in the

9

context of a self-employed tax return preparer who appears to work alone and meet with his clients in a rented, local, shared office space. These expenses include (but are not limited to):

| Expense Claimed | 2013 | 2017 | 2018 |
|---|---|---|---|
| Car and truck expenses | $12,294 | $9,036 | $16,218 |
| Depreciation | $4,243 | $7,846 | $3,262 |
| Other business property | $7,800 | $13,495 | $0 |
| Repairs and Maintenance | $4,521 | $13,850 | $14,526 |
| Supplies | $2,512 | $10,326 | $25,596 |
| Deductible meals and entertainment | $2,400 | $3,060 | $0 |
| Other expenses | $13,206 | $37,554[3] | $0 |

These expenses, in addition to other dubious expenses, resulted in Watson claiming a total Schedule C profit or loss of -$409 (2013), -$7,748 (2017), and $4,039 (2018).

Watson's individual returns for tax years 2019 and 2020 are dated as having been prepared in August 2021 and July 2021, respectively. This is a few months before Watson was indicted in this case and well after he was aware that he was being criminally investigated by the IRS.[4] Notably, he reports far fewer Schedule C expenses in these two years, including no contract labor costs. For example, for 2018, Watson claimed $121,947 in total Schedule C expenses (on $125,986 gross receipts); however, for 2019, he claimed only $33,906 in Schedule C expenses (on $137,133 gross receipts).[5]

Finally, on his 2013 return, Watson reported that $128,140 in tax payments had been withheld from his income (despite only reporting $176,591 in total income). As a result, Watson further claimed a refund of $88,201 for tax year 2013. But the IRS has no records of Watson having made any tax payments to the IRS whatsoever, or any other entity having made tax

---

[3] This total includes a reported $9,815 for "Gas," and $4,321 for "Cellphone."
[4] Watson was approached as early as October 2018 by IRS-CI agents.
[5] Watson's 2018 return was dated as having been prepared in January 2019.

10

payments to the IRS on Watson's behalf. In fact, IRS records reflect that Watson was issued a Form 1099-C by Ocwen Loan Servicing LLC reflecting that it had cancelled $128,140 of debt owed by Watson. Typically, if a taxpayer has debt cancelled, the amount of debt cancelled is treated as taxable income.[6] But regardless whether the cancelled debt is additional taxable income to Watson, it does not represent a tax payment to the IRS.

### ii. Watson's False Returns are Admissible Under Rule 404(b)

The four-part test under Rule 404(b) is satisfied with respect to Watson's own false individual returns.

First, the false returns are relevant to show Watson's absence of mistake and his modus operandi of claiming fictitious business expenses and fraudulent refunds. A likely defense that Watson might assert at trial is the (false) assertion that his clients provided him the false information, and that he mistakenly and unknowingly included that false information on their returns. But the fact that Watson similarly loaded his own tax returns with obviously false information, including fictious business expenses on his Schedules C, directly rebuts that defense. His clients were certainly not feeding Watson false information to put on his own returns. There was no mistake.

His own false returns are thus powerful evidence of willfulness with respect to the charged conduct of preparing false returns for his clients, satisfying the second part of the test.

Evidence of his false returns is also reliable, consisting of the returns themselves and

---

[6] *See Topic No. 431 Canceled Debt – Is It Taxable or Not?*, IRS (Feb. 1, 2023), https://www.irs.gov/taxtopics/tc431#:~:text=In%20general%2C%20if%20you%20have,the%20 year%20the%20cancellation%20occurs.

various IRS records that will be introduced via an IRS records custodian. And as with the charged conduct, his clients' testimony will also help establish the falsity of Watson's own returns.

Finally, for reasons similar to those discussed above with respect to the uncharged client returns, the probative value of Watson's own false returns is not substantially outweighed by the risk of unfair prejudice. At bottom, the conduct is of the same nature as the charged conduct: preparing false returns. *See Imariagbe*, 679 F. App'x at 262. In addition, any potential prejudice can be cured with a proper limiting instruction. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980).

        c.        Watson's Failure to File Individual Income Tax Returns for 2015 and 2016

Evidence of Watson's failure to file individual tax returns is also admissible as extrinsic evidence pursuant to Rule 404(b). Watson failed to file an individual tax returns for himself in tax years 2015 and 2016. In these two years, as Watson self-reported through the software he used to prepare his clients' returns, Watson earned approximately $277,316.77 (2015), and $211,388.05 (2016) in return preparation fees. These gross receipts placed him above the income filing threshold, requiring him to file individual income returns for those years.[7]

Similar to Watson's filing of false individual returns for himself, his failure to file an individual return for two consecutive years is probative of an absence of mistake and his knowledge with respect to the false returns he prepared on behalf of his clients, which ultimately provides additional proof of Watson's willfulness with respect to the charged conduct. It further rebuts any defense that Watson is a scrupulous tax return preparer who carefully follows the law

---

[7] *See* supra note 1.

with respect to filing taxes and shows instead that Watson knowingly disregards the law with respect to his own tax obligations.

For the same reasons discussed above with respect to the uncharged client returns and Watson's false 2013 and 2017 returns, evidence regarding Watson's failure to file individual returns is reliable and the probative value is not substantially outweighed by the risk of unfair prejudice. Accordingly, it is admissible pursuant to Rule 404(b).

        d.      <u>Evidence of Participation in Tax Fraud Committed by Sandra Curl and Percy Jacobs</u>

The evidence of Watson's assistance in the preparation and filing of false returns for trusts controlled by Sandra Curl and/or Percy Jacobs, during the timeframe at issue in this case, is admissible under Rule 404(b). Both Curl and Jacobs were found guilty after trial for their participation in this fraud and are pending sentencing in GJH-19-444. The method of fraud in the Curl/Jacobs returns is similar to that at issue here. In that case, the returns purported to show that the trusts had incurred substantial tax withholdings stemming from very little income. This inflation or deflation of refunds based upon false entries is analogous to the fraudulent method employed here.

The false returns are relevant to show absence of mistake and his modus operandi. This evidence demonstrates that the filing of the fraudulent returns in this case was no coincidence or accident, that he was not innocently provided incorrect financial data repeatedly by his clients, rather it shows that the defendant knew exactly what he was doing and acted willfully. The tax records of this additional criminal activity is reliable and highly probative. Regardless of the fact that the refunds in the Curl/Jacobs fraud were larger than the refunds at issue in this case, the

13

probative value is not substantially outweighed by the risk of unfair prejudice. At bottom, the conduct is of the same nature as the charged conduct: preparing false returns. *See Imariagbe*, 679 F. App'x at 262. In addition, any potential prejudice can be cured with a proper limiting instruction. *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980).

### V.     Conclusion

Watson's additional tax misconduct is either intrinsic evidence to the charged offenses or extrinsic evidence admissible under Federal Rule of Evidence 404(b). Broadly, all the evidence discussed herein is probative of Watson's willfulness with respect to the preparation of the false tax returns that are charged in the indictment. Accordingly, the government respectfully requests that the Court find that the evidence described above is admissible at trial.

Dated: February 6, 2023.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney

        */s/ G. Michael Morgan, Jr.*
(Digitally signed by GARY MORGAN, Date: 2023.02.06 23:27:23 -05'00')

        G. Michael Morgan, Jr.
        Assistant United States Attorney
        Matthew L. Cofer
        Trial Attorney
        U.S. Department of Justice, Tax Division

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to counsel of record for the defendant.

G. Michael Morgan, Jr.
Assistant United States Attorney

Digitally signed by GARY MORGAN
Date: 2023.02.06 23:27:48 -05'00'